UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANNE CIACCIARELLA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 3:07cv1241 (MRK) |
| | : | |
| MICHAEL BRONKO, | : | |
| DONALD J. ZEHNDER, | : | |
| | : | |
| Defendants. | : | |

**RULING AND ORDER**

Defendants Michael Bronko and Donald Zehnder have moved for sanctions under Rule 37(b) of the *Federal Rules of Civil Procedure* based on the alleged spoliation of evidence by Plaintiff Anne Ciacciarella. *See* Defs.' Mot. for Sanctions for Spoliation of Evidence [doc. # 97] ("Defs.' Mot."). Specifically, Defendants ask the Court to give the jury an adverse inference instruction regarding a lost audio recording of a conversation between Ms. Ciacciarella and Mr. Zehnder, which was made surreptitiously by Ms. Ciacciarella and subsequently disappeared. For the reasons that follow, the Court GRANTS Defendants' Motion for Sanctions [doc. # 97].

The Court assumes the parties' familiarity with the underlying facts of this case, and will discuss the facts relevant to the pending motion only briefly. This lawsuit arises out of Mr. Zehnder's termination of Ms. Ciacciarella, which Ms. Ciacciarella alleges was done at the urging of Mr. Bronko, then Mayor of the Borough of Naugatuck, as a result of her political affiliation. Mr. Zehnder denies Mr. Bronko's involvement in the decision to terminate Ms. Ciacciarella, and claims that the reasons for his decision were unrelated to her political affiliation. It is undisputed that on

1

May 28, 2007, shortly after Ms. Ciacciarella was fired, she sought out Mr. Zehnder at a local restaurant and, unbeknownst to Mr. Zehnder, recorded their conversation. Several days later, on June 1, 2007, Ms. Ciacciarella's husband did the same thing.

During discovery in this case, Ms. Ciacciarella revealed the existence of these two recordings. However, when she produced the audio recording device that was used to record the conversations, the May 28 conversation was not there. Instead, the device contained 15 minutes of silence followed by the June 1 recording. It is not clear when or how the May 28 recording was lost, although Ms. Ciacciarella admits to having listened to it several times. *See* Defs.' Mot. [doc. # 97] Ex. C at 142 (transcript of Ms. Ciacciarella's deposition testimony).

Spoliation of evidence is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (quotation marks and citation omitted). There is a three-prong test for spoliation. "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie*, 243 F.3d at 107-12). The burden is on the party seeking a sanction to establish each element. *See Smith v. City of New York*, 388 F. Supp. 2d 179, 189 (S.D.N.Y. 2005). Where spoliation has occurred, "a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the

party that breached its obligation), to declare a mistrial if trial has already commenced, or to proceed with a trial and give an adverse inference instruction." *Residential Funding*, 306 F.3d at 107.

Ms. Ciacciarella argues that Defendants have failed to carry their burden on all three prongs of the spoliation test. First, Ms. Ciacciarella claims that she was under no obligation to preserve the recording because she was not contemplating litigation when she made it. *See* Obj. to Defs.' Mot. for Sanctions [doc. # 101-2] ("Pl.'s Resp.") at 3-4. "This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation – most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). It is difficult to conceive of any reason why Ms. Ciacciarella would have secretly recorded her conversation with Mr. Zehnder *other* than to use the recording in litigation if it proved favorable to her. Ms. Ciacciarella may not have been planning to initiate litigation at the time of the conversation, but she must have at least contemplated the possibility and realized that the recording could be valuable evidence. Therefore, the Court concludes that Ms. Ciacciarella had a duty to preserve the recording from the moment it was made.[1]

As to the second prong of the spoliation test, Ms. Ciacciarella argues that she did not lose the recording with the requisite culpable state of mind. *See* Pl.'s Resp. [doc. # 101-2] at 4. In *Residential Funding*, the Second Circuit made clear that the second prong is satisfied where the party responsible for preserving the evidence acted in bad faith, with gross negligence, or even with simple

---

[1] Because Ms. Ciacciarella's duty to preserve the recording arose as soon as she made it, the Court need not wade into the dispute between the parties as to when the recording was actually lost.

negligence.  *See* 306 F.3d at 108.

> [The] sanction [of an adverse inference] should be available even for the negligent destruction of documents if that is necessary to further the remedial purpose of the inference.  It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently.  The adverse inference provides the necessary mechanism for restoring the evidentiary balance.  The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

*Id*. (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991) (alterations in original)).  Given the potential importance of the recording to this litigation, the Court has no trouble concluding that Ms. Ciacciarella's failure to safeguard the May 28 recording was at least negligent, if not grossly negligent.

Finally, Ms. Ciacciarella argues that Defendants have not shown that the missing recording would be relevant to their defense.

> "[R]elevant" in this context means something more than sufficiently probative to satisfy Rule 401 of the *Federal Rules of Evidence*.  Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction. . . .  Courts must take care not to hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence, because doing so would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction.

*Id*. at 108-09 (internal quotation marks and citations omitted, alterations in original).  The culpable state of mind analysis also affects the relevance analysis.  If a party acted in bad faith or was grossly negligent, that is generally sufficient to establish relevance (i.e. "a finding that the evidence was unfavorable to the grossly negligent party").  *Id*. at 109.  However, in cases involving simple negligence, the party moving for a sanction must establish relevance through other evidence.  *See*

4

*id*. Thus, in determining relevance, the Court must evaluate whether the party seeking an adverse inference has "adduced enough evidence of the contents of the missing material such that a reasonable jury *could* find in its favor." *Id*. at 109 n.4 (emphasis in original). The question of whether the missing was "in fact unfavorable to the culpable party is an issue of fact to be determined by the jury." *Id*.

Defendants rely on the contents of the June 1 recording to establish that the May 28 recording would have been relevant. *See* Mem. of Law in Supp. of Defs.' Mot. for Sanctions for Spoliation of Evidence [doc. #97-2] at 12-14. The Court is not sure that the June 1 recording is that helpful to Defendants. First of all, the conversation between Ms. Ciacciarella's husband and Mr. Zehnder is of low quality and difficult to understand. Furthermore, where it can be understood it is not clear whether what Mr. Zehnder says is helpful or harmful to his case. While Mr. Zehnder certainly does not admit that he fired Ms. Ciacciarella at the urging of Mr. Bronko, he also does not vehemently deny it – instead he simply refuses to comment. However, the Court does believe that a reasonable jury *could* find that the June 1 recording suggests that the May 28 recording would have been helpful to Defendants' theory of the case. Therefore, the Court will leave to the jury the question of whether the June 1 actually favors Defendants, and whether that means that the missing May 28 recording would also have been favorable.

In sum, the Court GRANTS Defendants' Motion for Sanctions [doc. # 97] and will give the jury an adverse inference instruction. The instruction will tell the jury that they are permitted to draw an adverse inference, but are not required to do so. Ms. Ciacciarella will also be allowed to testify as to how the recording may have been lost, if she so chooses.

IT IS SO ORDERED,


/s/      Mark R. Kravitz
United States District Judge


**Dated at New Haven, Connecticut: December 11, 2009.**